IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.                                                              23-CR-143

AUGUSTO MATEO FRANCISCO,

Defendant.

## PLEA AGREEMENT

The defendant, AUGUSTO MATEO FRANCISCO, and the United States Attorney

for the Western District of New York (hereinafter "the government") hereby enter into a plea

agreement with the terms and conditions as set out below.

## I.      THE PLEA AND POSSIBLE SENTENCE

1.      The defendant agrees to plead guilty to Counts 1, 2, and 4 of the Indictment,

which charge:

a)      in Count 1, a violation of Title 18, United States Code, Section 1589(a) (Forced

Labor) for which the maximum possible sentence is a term of imprisonment of 20 years, a

fine of $250,000, a mandatory $100 special assessment, and a term of supervised release of up

to 3 years;

b)      in Count 2, a violation of Title 18, United States Code, Section 1589(a) (Forced

Labor) for which the maximum possible sentence is a term of imprisonment of 20 years, a

fine of $250,000, a mandatory $100 special assessment, and a term of supervised release of up to 3 years; and

     c)     in Count 4, a violation of Title 18, United States Code, Sections 2423(a) and (e) (Transportation of a Minor) for which the mandatory minimum term of imprisonment is 10 years and the maximum possible sentence is a term of imprisonment of life, a fine of $250,000, a mandatory $100 special assessment, and a term of supervised release of at least 5 years and up to life.

     d)     The defendant understands that the penalties set forth in this paragraph are the minimum and maximum penalties that can be imposed by the Court at sentencing.

2.     The defendant understands that, unless the defendant is indigent, the Court must impose a special assessment of $5,000 pursuant to Title 18, United States Code, Section 3014, in addition to the assessment imposed under Title 18, United States Code, Section 3013.

3.     The defendant understands that, if it is determined that the defendant has violated any of the terms or conditions of supervised release, the defendant may be required to serve in prison all or part of the term of supervised release, up to 9 years, without credit for time previously served on supervised release, and if the defendant commits any criminal offense under Chapter 109A, 110 or 117, or Sections 1201 or 1591 of Title 18, United States Code, for which imprisonment for a term longer than 1 year can be imposed, the defendant shall be sentenced to a term of imprisonment of not less than 5 years and up to life. As a consequence, a prison term imposed for a violation of supervised release may result in the

defendant serving a sentence of imprisonment longer than the statutory maximums set forth in ¶ 1 of this agreement.

4.      The defendant has been advised and understands that under the Sex Offender Registration and Notification Act, the defendant must register and keep registration current in all of the following jurisdictions:  where the defendant resides; where the defendant is employed; and where the defendant is a student.  The defendant understands the requirements for registration include providing the defendant's name, residence address, and the names and addresses of any places where the defendant is or will be an employee or student, among other information.  The defendant further understands that the requirement to keep the registration current includes informing at least one jurisdiction in which the defendant resides, is an employee, or is a student, not later than three (3) business days after, any change of the defendant's name, residence, employment, or student status.  The defendant has been advised and understands that failure to comply with these obligations subjects the defendant to prosecution for failure to register under federal law, Title 18, United States Code, Section 2250, which is punishable by imprisonment, a fine, or both.

5.      The defendant acknowledges that a conviction in this action may result in the defendant's civil commitment pursuant to 18 U.S.C. § 4248 as a sexually dangerous person. The defendant understands that a determination as to whether the defendant will be subject to civil commitment will be made initially by the Attorney General or the Director of the Bureau of Prisons at the conclusion of the defendant's term of imprisonment and that the Court will make the final determination in a separate proceeding.

## II.    ELEMENTS AND FACTUAL BASIS

6.    The defendant understands the nature of the offenses set forth in ¶ 1 of this agreement and understands that if this case proceeded to trial, the government would be required to prove beyond a reasonable doubt the following elements of the crimes:

**Counts 1 and 2 (18 U.S.C. § 1589(a))**

 a. First, the defendant obtained or provided the labor or services of another;

 b. Second, the defendant used any one of or any combination of (a) force or physical restraint, or threat of force or physical restraint, against that person or another; (b) serious harm or threat of serious harm against that person or another; (c) abuse or threatened abuse of law or legal process; and/or (d) a scheme, plan, or pattern intended to cause that person to believe that, if that person did not perform such labor or services, that the person or another person would suffer serious harm or physical restraint; and

 c. Third, the defendant acted knowingly.

**Count 4 (18 U.S.C. §§ 2423(a) and (e))**

 a. First, the defendant knowingly transported an individual in interstate commerce;

 b. Second, the individual was under 18 years of age at the time of the offense; and

 c. Third, the defendant intended that the individual engage in sexual activity for which any person could be charged with a criminal offense.

### FACTUAL BASIS

7.    The defendant and the government agree to the following facts, which form the basis for the entry of the plea of guilty including relevant conduct:

 a. The defendant, AUGUSTO MATEO FRANCISCO, was born in Guatemala in 1991, and came to the United States in or around 2004. In or around 2013, the defendant became a United States Legal Permanent Resident ("LPR").

4

b. Between in or around September 2018, and in or around September 2020, the defendant resided in the Dunkirk, New York area, within the Western District of New York, and assisted individuals from Guatemala to enter the United States and come to the Dunkirk, New York area where he would provide them with housing and employment at area farms.

Count 1

c. Between in or around February 2019, and in or around July 2019, the defendant, AUGUSTO MATEO FRANCISCO, did knowingly obtain the labor and services of Victim 1, a person known to the parties, by means of threat of force and threat of serious harm and through a scheme that caused Victim 1 to believe that if Victim 1 did not perform labor and services for the defendant, Victim 1 would suffer serious harm.

d. Victim 1 was born in Guatemala and is a Guatemalan citizen. Victim 1 entered the United States illegally in 2019, and with the assistance of the defendant, traveled from the U.S.-Mexico border to Dunkirk, New York. Once in Dunkirk, the defendant provided Victim 1 with housing, for which the defendant charged rent. The defendant also arranged for Victim 1 to work on various farms in the area. The defendant received the wages Victim 1 earned from this work and retained a portion of those wages for himself. In addition to charging Victim 1 rent and retaining a portion of Victim 1's wages, the defendant also charged Victim 1 for utilities, rides to work, and other items.

e. The defendant further told Victim 1 that Victim 1 owed him $2,500 for the bus tickets that the defendant had purchased to transport Victim 1 from the U.S.-Mexico border to New York. The actual price of the tickets was approximately $550. When Victim 1 confronted the defendant about the purported debt, the defendant told Victim 1 that if Victim 1 didn't repay the money, the defendant would not give Victim 1 any more work and the defendant would call immigration authorities on Victim 1 and have him deported.

f. In addition to threatening Victim 1 with deportation, the defendant also said that if anyone who worked for him left without paying off their debt, he would kill their family in Guatemala. On at least one occasion, the defendant specifically told Victim 1 that if Victim 1 fled, the defendant would kill Victim 1's family in Guatemala.

Count 2

g. Between in or around September 2018, and in or around September 2020, the defendant, AUGUSTO MATEO FRANCISCO, did knowingly obtain the labor and services of Victim 2, a person known to the parties, by means of threat of force and threat of serious harm and

5

through a scheme that caused Victim 2 to believe that if Victim 2 did not perform labor and services for the defendant, Victim 2 would suffer serious harm.

h. Victim 2 was born in Guatemala and is a Guatemalan citizen. Victim 2 entered the United States illegally in 2017. In or around September 2018, Victim 2 began working for the defendant in the Dunkirk, New York area. In order to induce Victim 2 to work for him, the defendant made various promises to Victim 2, all of which turned out to be false, such as promising to provide Victim 2 with free rides to work and promising Victim 2 that he would not charge Victim 2 extra rent because he had a child.

i. While Victim 2 was working for the defendant, the defendant threatened to harm Victim 2's family in Guatemala if Victim 2 did not continue to work for the defendant. The defendant also threatened to report Victim 2's wife to immigration authorities and have her deported.

Count 4

j. On or about June 19 and 20, 2020, the defendant knowingly transported Minor Victim 1, a person known to the parties and who was sixteen years-old at the time, in interstate commerce with the intent that Minor Victim 1 engage in any sexual activity for which the defendant could be charged with a criminal offense.

k. Minor Victim 1 and her mother were both born in Guatemala and came to the United States illegally in or around March 2019. Minor Victim 1 was fifteen years old at the time. The defendant purchased bus tickets for Minor Victim 1 and her mother to take them from the U.S.-Mexico border to New York. Shortly after arriving in Dunkirk, New York, Minor Victim 1's mother began working for the defendant and Minor Victim 1 attended school. The defendant also provided Minor Victim 1 and her mother with housing, for which they paid rent.

l. A few months after arriving in Dunkirk, New York, Minor Victim 1 stopped attending school and began working for the defendant. During this time, while Minor Victim 1 was working at a farm, the defendant took Minor Victim 1 to a van and forced her to have sex with him. The defendant told Minor Victim 1 not tell anyone what had happened and threatened Minor Victim 1 that her family in Guatemala would be in danger if she did tell anyone.

m. On or about May 25, 2020, the defendant went to the residence where Minor 1 was living, while Minor 1's mother was not there, and took Minor 1 to a trailer in Ripley, New York. From on or about May 25, 2020, until on or about June 6, 2020, the defendant confined Minor 1 to

the trailer, during which time the defendant forced Minor Victim 1 to have sex with him. On June 6, 2020, Minor Victim 1 was rescued from the trailer by law enforcement.

n. About two weeks later, on or about June 16, 2020, Minor Victim 1 and her mother traveled from Dunkirk, New York to the Atlanta, Georgia area in order to get away from the defendant. However, a few days after they departed for Georgia, the defendant and another individual known to the parties followed Minor Victim 1 and her mother to Georgia, made contact with Minor Victim 1, and threatened Minor Victim 1 into entering the van and driving with them from Georgia back to the trailer in Ripley, New York. The defendant's intent in taking Minor Victim 1 from Georgia to Ripley, New York, was so that he could have sexual intercourse with her once they were back in New York. Once back in Ripley, New York, the defendant had sexual intercourse with Minor Victim 1 on multiple occasions, until Minor Victim 1 was rescued by law enforcement on or about June 24, 2020.

o. Based on the sexual activity that occurred between the defendant and Minor Victim 1 subsequent to the defendant transporting Minor Victim 1 from Georgia to Ripley, New York, the defendant could have been charged with violating New York Penal Law § 130.25(2): Rape in the Third Degree. It is a violation of New York Penal Law § 130.25(2) for a person who is twenty-one years old or more to engage in sexual intercourse with another person less than seventeen years old. Rape in the Third Degree is a Class E felony.

## III.   SENTENCING GUIDELINES

8.   The defendant understands that the Court must consider but is not bound by the Sentencing Guidelines (Sentencing Reform Act of 1984).

**Count 1:**

### BASE OFFENSE LEVEL

9.   The government and the defendant agree that Guidelines § 2H4.1(a)(1) applies to the offense of conviction charged in Count 1 and provides for a base offense level of 22.

7

## SPECIFIC OFFENSE CHARACTERISTICS
## U.S.S.G. CHAPTER 2 ADJUSTMENTS

10.    The government and the defendant agree that the following specific offense characteristic does apply:

a.    the one level increase pursuant to Guidelines § 2H4.1(b)(3)(C) (the victim was held in a condition of peonage or involuntary servitude for more than 30 days but less than 180 days).

## ADJUSTED OFFENSE LEVEL

11.    Based on the foregoing, it is the understanding of the government and the defendant that the adjusted offense level for Count 1 is 23.

## Count 2:
## BASE OFFENSE LEVEL

12.    The government and the defendant agree that Guidelines § 2H4.1 applies to the offense of conviction charged in Count 2 and provides for a base offense level of 22.

## SPECIFIC OFFENSE CHARACTERISTICS
## U.S.S.G. CHAPTER 2 ADJUSTMENTS

13.    The government and the defendant agree that the following specific offense characteristic does apply:

a.    the three level increase pursuant to Guidelines § 2H4.1(b)(3)(A) (the victim was held in a condition of peonage or involuntary servitude for more than one year).

## ADJUSTED OFFENSE LEVEL

14.    Based on the foregoing, it is the understanding of the government and the defendant that the adjusted offense level for Count 2 is 25.

## Count 4:

## BASE OFFENSE LEVEL

15.    The government and the defendant agree that Guidelines § 2G1.3(c)(3) and Guideline § 2A3.1(a)(2) apply to the offense of conviction charged in Count 4 and provide for a base offense level of 30.

## SPECIFIC OFFENSE CHARACTERISTICS
## U.S.S.G. CHAPTER 2 ADJUSTMENTS

16.    The government and the defendant agree that the following specific offense characteristics do apply:

   a.  the four level increase pursuant to Guidelines § 2A3.1(b)(1) (offense involved conduct described in 18 U.S.C. § 2241(a) or (b)); and

   b.  the four level increase pursuant to Guidelines § 2A3.1(b)(5) (the victim was abducted).

## ADJUSTED OFFENSE LEVEL

17.    Based on the foregoing, it is the understanding of the government and the defendant that the adjusted offense level for Count 4 is 38.

## COMBINED ADJUSTED OFFENSE LEVEL

18.    Based on Guidelines § 3D1.4(a), it is the understanding of the government and the defendant that the defendant's combined adjusted offense level is 38.

## ACCEPTANCE OF RESPONSIBILITY

19.     At sentencing, the government agrees not to oppose the recommendation that the Court apply the two (2) level decrease of Guidelines § 3E1.1(a) (acceptance of responsibility) and further agrees to move the Court to apply the additional one (1) level decrease of Guidelines § 3E1.1(b), which would result in a total offense level of 35.

## CRIMINAL HISTORY CATEGORY

20.     It is the understanding of the government and the defendant that the defendant's criminal history category is II.  The defendant understands that if the defendant is sentenced for, or convicted of, any other charges prior to sentencing in this action the defendant's criminal history category may increase.  The defendant understands that the defendant has no right to withdraw the pleas of guilty based on the Court's determination of the defendant's criminal history category.

## GUIDELINES' APPLICATION, CALCULATIONS AND IMPACT

21.     It is the understanding of the government and the defendant that, with a total offense level of 35 and criminal history category of II, the defendant's sentencing range would be a term of imprisonment of **188 to 235 months**, a fine of $40,000 to $400,000, and a period of supervised release of 5 years to life.  Notwithstanding this, the defendant understands that at sentencing the defendant is subject to the minimum and maximum penalties set forth in ¶ 1 of this agreement.

22.    Notwithstanding the above calculations, it is the agreement of the parties pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure that the Court at the time of sentence impose a sentence of imprisonment of between **180 and 360 months**, as part of the appropriate sentence in this case.  If, after reviewing the presentence report, the Court rejects this agreement, the parties will be relieved of their other obligations under this agreement and the defendant shall then be afforded the opportunity to withdraw the pleas of guilty.  This agreement does not affect the amount of a fine, the amount of restitution or the length and conditions of a term of supervised release that may be imposed by the Court at sentencing.

23.    The defendant understands that except as set forth in ¶ 22, above, the Court is not bound to accept any Sentencing Guidelines calculations set forth in this agreement and the defendant will not be entitled to withdraw the pleas of guilty based on the sentence imposed by the Court.

24.    In the event the Court contemplates any Guidelines adjustments, departures, or calculations different from those agreed to by the parties above, the parties reserve the right to answer any inquiries by the Court concerning the same.

## IV.    STATUTE OF LIMITATIONS

25.    In the event the defendant's pleas of guilty are withdrawn, or convictions vacated, either pre- or post-sentence, by way of appeal, motion, post-conviction proceeding, collateral attack or otherwise, the defendant agrees that any charges dismissed pursuant to

11

this agreement shall be automatically reinstated upon motion of the government and further agrees not to assert the statute of limitations as a defense to any federal criminal offense which is not time barred as of the date of this agreement. This waiver shall be effective for a period of six months following the date upon which the withdrawal of the guilty pleas or vacating of the convictions becomes final.

## V.    IMMIGRATION STATUS

26.    The defendant acknowledges that the defendant is not a citizen of the United States. The defendant understands that if the defendant is not a citizen of the United States, the defendant's guilty pleas and conviction make it very likely that the defendant's removal from the United States is presumptively mandatory, and that, at a minimum, the defendant is at risk of being removed or suffering other adverse immigration consequences. The defendant is on notice that the defendant's ability to enter, remain, and/or reside in the United States is subject to the laws, regulations, and associated policies of the Department of Homeland Security. The defendant understands that any effect that the defendant's conviction in this action will have upon the defendant's immigration status, that is, possible removal, denaturalization, or other immigration consequence, is the subject of a separate proceeding. The defendant has had an opportunity to fully determine what the consequences of the defendant's conviction may be on the defendant's immigration status, and the defendant understands that no one, including the defendant's attorney or the district court, can predict to a certainty the effect of the defendant's conviction on the defendant's immigration status. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any

12

immigration consequences that the guilty pleas may entail, even if the consequence is the defendant's automatic removal from the United States.

27.  The defendant understands that the defendant is bound by the guilty pleas regardless of the immigration consequences of the pleas.  Accordingly, the defendant waives any and all challenges to the guilty pleas and to the sentence based on those consequences, and agrees not to seek to withdraw the guilty pleas or to file a direct appeal or any kind of collateral attack challenging the guilty pleas, convictions, or sentence, based on the immigration consequences of the guilty pleas, convictions, or sentence.  This waiver does not preclude the defendant from raising a claim of ineffective assistance of counsel in the appropriate forum.

## VI.   GOVERNMENT RIGHTS AND OBLIGATIONS

28.  The defendant understands that the government has reserved the right to:

a.   provide to the Probation Office and the Court all the information and evidence in its possession that the government deems relevant concerning the defendant's background, character and involvement in the offenses charged, the circumstances surrounding the charges and the defendant's criminal history;

b.   respond at sentencing to any statements made by the defendant or on the defendant's behalf that are inconsistent with the information and evidence available to the government;

c.   advocate for a specific sentence consistent with the terms of this agreement including the amount of restitution and/or a fine and the method of payment; and

d.   modify its position with respect to any sentencing recommendation or sentencing factor under the Guidelines including criminal history category, in the event that subsequent to this agreement the government receives previously unknown information, including conduct and

statements by the defendant subsequent to this agreement, regarding the recommendation or factor.

29.     At sentencing, the government will move to dismiss the open counts of the Indictment in this action.

## VII.    RESTITUTION AND FINANCIAL PENALTY PROVISIONS

30.     The defendant acknowledges that pursuant to 18 U.S.C. §§ 1593, 2259 and 2429, the Court must order restitution for the full amount of the compensable losses of the victims as determined by the Court.  The defendant understands that the defendant will not be entitled to withdraw the pleas of guilty based upon any restitution amount ordered by the Court.

31.     Pursuant to 18 U.S.C. § 3663(a)(3), 18 U.S.C. § 3663A(a) & (b), 18 U.S.C. §3664, 18 U.S.C. § 1593, 18 U.S.C. § 2259, and 18 U.S.C. § 2429, the defendant agrees to make full restitution to all victims of the defendant's offenses as to all counts charged, whether or not the defendant enters a plea of guilty to such counts and whether or not such counts are dismissed pursuant to this agreement. Further, the defendant agrees to pay restitution to any victims, for the entire scope of the defendant's criminal conduct, including but not limited to all matters included as relevant conduct. The defendant acknowledges and agrees that this criminal conduct (or relevant conduct) includes any victim of any human trafficking offenses, charged or uncharged, under Chapter 77, United States Code, and any victim of any violation of federal and/or state law committed by the defendant, including any contact sexual offense.

14

32.     The defendant agrees that the defendant will not oppose bifurcation of the sentencing hearing under 18 U.S.C. § 3664(d)(5) if the victims' losses are not ascertainable prior to sentencing.

33.     The defendant agrees to disclose fully and completely all assets in which the defendant either has any property interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party.  The defendant agrees to make complete financial disclosure to the United States by truthfully executing a sworn financial statement by the deadline set by the United States, or if no deadline is set, no later than two weeks prior to the date of sentencing.  The defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms for the United States to obtain tax information, bank account records, credit history, and social security information.  The defendant agrees to discuss or answer any questions by the United States relating to the defendant's complete financial disclosure.  The defendant will submit to an examination under oath and/or a polygraph examination conducted by an examiner selected by the U.S. Attorney's Office on the issue of the defendant's financial disclosures and assets, if deemed necessary by the U.S. Attorney's Office.  The defendant certifies that the defendant has made no transfer of assets in contemplation of this prosecution for the purpose of evading or defeating financial obligations that are created by the agreement and/or that may be imposed upon the defendant by the Court.  In addition, the defendant promises that the defendant will make no such transfers in the future.

15

34.     The defendant understands and agrees that the Court, at the time of sentencing, will order that all monetary penalties imposed at that time (including any fine, restitution, or special assessment imposed in accordance with the terms and conditions of this plea agreement) are to be due and payable in full immediately and will be (i) subject to immediate enforcement as provided for in Title 18, United States Code, Section 3613, and (ii) submitted to the Treasury Offset Program (TOP) so that any federal payment or transfer of returned property the defendant receives may be offset and applied to federal debts but will not affect any periodic payment schedule set by the Court.

35.     Under the TOP program, the Department of the Treasury will reduce or withhold any of the defendant's eligible Federal payments by the amount of the defendant's debt. This "offset" process is authorized by the Debt Collection Act of 1982, as amended by the Debt Collection Improvement Act of 1996 and the Internal Revenue Code. The government hereby provides the defendant with notice that 60 days after sentencing, unless the monetary judgment(s) ordered by the Court is paid in full immediately after sentencing, the government will refer the outstanding monetary judgment to TOP for the offset of any pending federal payments, and the defendant agrees not to object or contest any such action by the government and waives any further notice.

36.     The defendant understands and acknowledges that any schedule of payments imposed by the Court at the time of sentencing is merely a minimum schedule of payments and does not, in any way, limit those methods available to the government to enforce the

judgment.   Further, the defendant agrees not to challenge or dispute any efforts by the government to enforce collection of any monetary penalties ordered by the Court.

37.   The defendant understands and agrees that under Title 18, United States Code, Section 3664(m), the government may use all available and reasonable means to collect restitution.  The defendant further understands that pursuant to Title 18, United States Code, Section 3664(n), if the defendant is ordered to pay restitution, or pay a fine, and receives substantial resources from any source during a period of incarceration, including inheritance, settlement, or other judgment, the defendant shall be required to apply the value of such resources to any restitution or fine still owed without objection.

38.   The defendant agrees that any funds and assets in which the defendant has an interest, which have been seized or restrained by the government or law enforcement as part of the investigation underlying this plea agreement, and not subject to forfeiture, will be used to offset any judgment of restitution and fine imposed pursuant to this plea agreement, or to satisfy any debts owed by the defendant to the government and/or agencies thereof.

39.   To the extent that the defendant has an interest, the defendant authorizes the District Court Clerk to release any funds posted as security for the defendant's appearance bond in this case, which funds shall be applied to satisfy the financial obligation(s) of the defendant pursuant to the judgment of the Court.

40.   The defendant is aware that voluntary payment of restitution prior to adjudication of guilt is a factor in considering whether the defendant has accepted responsibility under the United States Sentencing Guidelines §3E1.1.

## VIII.   <u>APPEAL RIGHTS</u>

41.   The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed.  The defendant, however, knowingly waives the right to appeal and collaterally attack any component of a sentence imposed by the Court which falls within or is less than a term of imprisonment of 180 to 360 months, a fine of $40,000 to $400,000, and a period of supervised release of 5 years to life, notwithstanding the manner in which the Court determines the sentence.  In the event of an appeal of the defendant's sentence by the government, the defendant reserves the right to argue the correctness of the defendant's sentence.

42.   The defendant understands that by agreeing not to collaterally attack the sentence, the defendant is waiving the right to challenge the sentence in the event that in the future the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

43.   The government waives its right to appeal any component of a sentence imposed by the Court which falls within or is greater than a term of imprisonment of 188 to 235 months, a fine of $40,000 to $400,000, and a period of supervised release of 5 years to life, notwithstanding the manner in which the Court determines the sentence.  However, in

18

the event of an appeal from the defendant's sentence by the defendant, the government reserves its right to argue the correctness of the defendant's sentence.

## IX.   FORFEITURE PROVISIONS

44.     As a condition of the plea, the defendant agrees not to contest any forfeiture or abandonment proceeding that may be brought by the government and agrees to immediately criminally forfeit all of the defendant's right, title and interest to any and all property which is subject to forfeiture pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 1594(d), and Title 28, United States Code, Section 2461 which is in the possession and control of the defendant or the defendant's nominees.  That property includes:

**MONEY JUDGMENT:**

a.  The sum of United States currency, in an amount to be determined by the Court, that represents proceeds that the defendant obtained from his involvement in the criminal conduct, which if not readily available will become a monetary judgment and will serve as a lien against the defendant's property, wherever situated, with interest to accrue at the prevailing rate per annum until fully satisfied in the event this amount is not located.

45.     The defendant also agrees that the monetary amount is properly forfeitable to the government pursuant to Title 21, United States Code, Section 853.  The defendant also admits that based upon the acts of the defendant, the monetary amount is no longer available for forfeiture, and thus the government has the right to seek forfeiture of substitute assets of the defendant pursuant Title 21, United States Code, Section 853(p).  The defendant understands and agrees that the Court, at the time of sentencing, will order a Forfeiture

Money Judgment which is due and payable in full immediately and subject to immediate enforcement by the government.

46.     All payments made by the defendant toward the Forfeiture Money Judgment shall be made by money order, certified check and/or official bank check, payable to the "U.S. Customs & Border Protection."   The defendant shall cause said payment(s) to be hand delivered or sent by overnight mail delivery to the United States Attorney's Office, Western District of New York, Asset Recovery Division, with the criminal docket number noted on the face of the instrument.  The defendant consents to the restraint of all payments made toward the Forfeiture Money Judgment.  The defendant also waives all statutory deadlines, including but not limited to deadlines set forth in Title 21, United States Code, Section 983. The defendant agrees to fully assist the government in effectuating the payment of the Forfeiture Money Judgment, by among other things, executing any documents necessary to effectuate any transfer of title to the government.  The defendant agrees that any funds and assets in which the defendant has an interest, which have been seized or restrained by the government or law enforcement as part of the investigation underlying this plea agreement, will be used to offset any forfeiture money judgment imposed pursuant to this plea agreement, or to satisfy any debts owed by the defendant to the government and/or agencies thereof.

47.     The defendant further acknowledges that if the defendant cannot pay the full amount of the Forfeiture Money Judgment immediately, the defendant agrees that the conditions of Title 21, United States Code, Section 853(p) have been satisfied, and thus the government has the right to seek forfeiture of substitute assets of the defendant pursuant to

20

Title 21, United States Code, Section 853(p) and Federal Rule of Criminal Procedure 32.2(e)(1)(B).

48.    The defendant agrees to fully assist the government in the identification and recovery of any property of the defendant to satisfy such judgment. The defendant agrees to the forfeiture of such property and will take whatever steps are necessary to pass clear title to the government, including, but not limited to, surrender of title and execution of any documents necessary to transfer the defendant's interest to the government. The defendant agrees to waive notice and not to object to any motions made by the government for substitute assets. Further, the defendant consents to the entry of any such order of forfeiture for substitute assets.

49.    The defendant understands and agrees that unless the Forfeiture Money Judgment is paid in full immediately, federal law allows agencies to refer debts to the United States Department of the Treasury for the purpose of collecting debts through the Treasury Offset Program ("TOP"). Under this program, the Department of the Treasury will reduce or withhold any of the defendant's eligible Federal payments by the amount of the defendant's debt. This "offset" process is authorized by the Debt Collection Act of 1982, as amended by the Debt Collection Improvement Act of 1996 and the Internal Revenue Code. The government hereby provides the defendant notice that 60 days after sentencing, the government will refer the outstanding Forfeiture Money Judgment to TOP for the offset of any pending federal payments and waives any further notice. The defendant agrees not to object or challenge any offset taken through TOP.

21

50.     The defendant agrees not to file a claim or petition seeking remission or contesting the forfeiture of any property against which the government seeks to satisfy the Forfeiture Monetary Judgment in any administrative or judicial (civil or criminal) proceeding. The defendant further agrees not to assist any person or entity in the filing of any claim or petition seeking remission or contesting the forfeiture of any property against which the government seeks to satisfy the Forfeiture Money Judgment in any administrative or judicial (civil or criminal) forfeiture proceeding.

51.     To the extent that the defendant has an interest, the defendant authorizes the District Court Clerk to release any funds posted as security for the defendant's appearance bond in this case, when no restitution has been ordered, which funds shall be applied to satisfy the Forfeiture Money Judgment.

52.     After the acceptance of the defendant's guilty pleas, and pursuant to Rule 32.2(b)(2) of the Federal Rules of Criminal Procedure, the Court will issue a Preliminary and Final Order of Forfeiture for the monetary sum listed above. The defendant hereby waives any right to notice of such Preliminary and Final Order of Forfeiture. The defendant further consents and agrees that the Preliminary and Final Order of Forfeiture shall issue and become final as to the defendant prior to sentencing and agrees that it shall be made part of the defendant's sentence and included in the judgment pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure. The defendant further agrees to waive any time restrictions or requirements as provided in Title 18, United States Code, Section 983, any notice provisions in Rules 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument,

22

announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The defendant knowingly and voluntarily waives his right to any required notice concerning the forfeiture of any of the property forfeited hereunder, including notice set forth in an indictment, information or administrative notice. The defendant acknowledges that the defendant understands that the forfeiture of property is part of the sentence that may be imposed in this case and waives any failure by the Court to advise the defendant of this, pursuant to Rule 11(b)(1)(J), at the time the guilty pleas are accepted. Forfeiture of the defendant's property shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

53. The defendant knowingly, intelligently, and voluntarily waives his right to a jury trial on the forfeiture of the property. The defendant knowingly, intelligently, and voluntarily waives all constitutional, legal and equitable defenses to the forfeiture of the property in any proceeding, whether constitutional or statutory, including but not limited to, any defenses based on principles of double jeopardy, as to this criminal proceeding or any related civil or administrative proceeding, the Ex Post Facto clause of the Constitution, any applicable statute of limitations, venue, or any defense under the Eighth Amendment, including a claim of excessive fines.

54. The defendant agrees that the above-described property is subject to forfeiture and waives any and all statutory and constitutional rights, including but not limited to time

23

restrictions and notice provisions with respect to the final disposition or forfeiture of the above property.

55.    The defendant further agrees that the forfeiture of the aforementioned property as authorized herein shall not be deemed an alteration of the defendant's sentence. Forfeiture of the defendant's property shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, any income taxes or any other penalty that the Court may impose upon the defendant in addition to forfeiture and shall survive bankruptcy.

56.    The defendant agrees that in the event this plea agreement is voided for any reason, the agreement for forfeiture, abandonment and disposition of the money judgment survives and shall be given full force and effect. The failure of the defendant to forfeit any property as required under this agreement, including the failure of the defendant to execute any document to accomplish the same on timely notice to do so, may constitute a breach of this agreement.

57.    The defendant agrees that if, for any reason, in any pleadings before the Court or any order of the Court, including but not limited to the Preliminary and Final Order of Forfeiture and the Judgment and Commitment, the government fails to properly identify an item to be forfeited, fails to include any item that is forfeitable under the applicable forfeiture statute in this case or includes a clerical or technical error, the defendant will consent and not oppose any effort by the government to amend, correct or add to the description/list of items subject to forfeiture in this case. Additionally, to the extent necessary and at the discretion of

the United States Attorney's Office, the defendant further agrees in the alternative, to the abandonment or civil forfeiture of any items that were excluded from the original description of items to be forfeited.    Finally, if not specially identified or listed above, the defendant agrees to the abandonment of any and all cellular phones, computers and electronic equipment seized by law enforcement in this case.

### X.    TOTAL AGREEMENT AND AFFIRMATIONS

58.    This plea agreement represents the total agreement between the defendant, AUGUSTO MATEO FRANCISCO, and the government.  There are no promises made by anyone other than those contained in this agreement.  This agreement supersedes any other prior agreements, written or oral, entered into between the government and the defendant.

TRINI E. ROSS
United States Attorney
Western District of New York

BY: _____
DOUGLAS A. C. PENROSE
Assistant United States Attorney

Dated:  January 30, 2025

25

I have read this agreement, which consists of pages 1 through 26. I have had a full opportunity to discuss this agreement with my attorney, John J. Morrissey, Esq. I agree that it represents the total agreement reached between me and the government. No promises or representations have been made to me other than what is contained in this agreement. I understand all of the consequences of my pleas of guilty. I fully agree with the contents of this agreement. I am signing this agreement voluntarily and of my own free will.


AUGUSTO MATEO FRANCISCO
Defendant

Dated: January 30, 2025


JOHN J. MORRISSEY, ESQ.
Attorney for the Defendant

Dated: January 30, 2025

26